**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. JOHN A. WOOD, and on behalf of the STATES of CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, LOUISIANA, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, WISCONSIN and the DISTRICT OF COLUMBIA,<br><br>        Plaintiffs,<br><br>   v.<br><br>ALLERGAN, INC.,<br><br>        Defendant. | No. 18-CV-9857<br><br>**MEMORANDUM OF LAW IN SUPPORT OF RELATOR'S MOTION TO APPLY EQUITABLE TOLLING TO THE STATUTE OF LIMITATIONS FOR THE CLAIMS ASSERTED** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 6

ARGUMENT ....................................................................................................................... 8

I.      Relator Wood Has More Than Acted with Reasonable Diligence ................................... 10

II.     The Extraordinary Circumstances Here Wholly Warrant Equitable Tolling.................... 12

CONCLUSION................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baldayaque v. United States,*
    338 F.3d 145 (2d Cir. 2003).............................................................................. 12

*Bergman v. Kindred Healthcare, Inc.,*
    949 F. Supp. 2d 852 (N.D. Ill. 2013) ............................................................... 12

*Bolarinwa v. Williams,*
    593 F.3d 226 (2d Cir. 2010).............................................................................. 12

*Boos v. Runyon,*
    201 F.3d 178 (2d Cir. 2000)................................................................................ 9

*Burnett v. New York Central R.R. Co.,*
    380 U.S. 424 (1965).................................................................................... 13, 14

*Chao v. Russell P. Le Frois Builder, Inc.,*
    291 F.3d 219 (2d Cir. 2002)................................................................................ 8

*Chung v. U.S. Dep't of Justice,*
    333 F.3d 273 (D.C. Cir. 2003) ........................................................................... 4

*Diaz v. Kelly,*
    515 F.3d 149 (2d Cir. 2008).............................................................................. 12

*Dixon v. Shalala,*
    54 F.3d 1019 (2d Cir. 1995)............................................................................... 9

*Haekal v. Refco, Inc.,*
    198 F.3d 37 (2d Cir. 1999)............................................................................... 13

*Harper v. Ercole,*
    648 F.3d 132 (2d Cir. 2011)......................................................................... 9, 12

*Hart v. Crab Addison,*
    No. 13-cv-6458, 2015 WL 365785 (W.D.N.Y. Jan. 27, 2015).......................... 12

*Herb v. Pitcairn,*
    325 U.S. 77 (1945)........................................................................................... 13

*Holland v. Florida,*
    560 U.S. 631 (2010)..................................................................................... 9, 10

*In re Club Ventures Inv. LLC*,
    507 B.R. 91 (S.D.N.Y. 2014)............................................................................ 5

*In re Puda Coal Sec. Inc., Litig.*,
    30 F. Supp. 3d 261 (S.D.N.Y. 2014)............................................................ 8, 10

*Irwin v. Dep't of Veterans Affairs*,
    498 U.S. 89 (1990)................................................................................... 13, 14

*Jackson v. Bloomberg, L.P.*,
    298 F.R.D. 152 (S.D.N.Y. 2014) .................................................................. 12

*Johnson v. Nyack Hosp.*,
    86 F.3d 8 (2d Cir. 1996)............................................................................... 10

*Kassman v. KPMG LLP*,
    No. 11-cv-3743 LGS, 2015 WL 5178400 (S.D.N.Y. Sept. 4, 2015)................... 9, 12

*Kellogg Brown & Root Servs., Inc. v. U.S., ex rel. Carter*,
    135 S. Ct. 1970 (2015).................................................................................. 3

*Lee v. ABC Carpet & Home*,
    236 F.R.D. 193 (S.D.N.Y. 2006) .................................................................. 12

*Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*,
    397 F.3d 77 (2d Cir. 2005)............................................................................ 5

*Lonchar v. Thomas*,
    517 U.S. 314 (1996)..................................................................................... 10

*McGlone v. Contract Callers, Inc.*,
    867 F. Supp. 2d 438 (S.D.N.Y. 2012)............................................................ 12

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
    232 F. Supp. 3d 558 (S.D.N.Y. 2017)............................................................. 5

*Moore v. Knight*,
    368 F.3d 936 (7th Cir. 2004) ....................................................................... 10

*Morris v. City of New York*,
    No. 98-cv-6607(HB), 2003 WL 22533399 (S.D.N.Y. Nov. 7, 2003) ..................... 13

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013)............................................................................ 8

*Ranasinghe v. Kennell*,
    No. 16-cv-2170 (JMF), 2017 WL 384357 (S.D.N.Y. Jan. 25, 2017) ...................... 5

*Roundtree v. City of New York*,
    No. 15-cv-6582-GHW, 2018 WL 443751 (S.D.N.Y. Jan. 16, 2018) ........................................ 9

*Starns v. Andrews*,
    524 F.3d 612 (5th Cir. 2008) ........................................................................................ 10

*U.S. ex rel. Bledsoe v. Cmty. Health Sys.*,
    501 F.3d 493 (6th Cir. 2007) ........................................................................................ 9

*U.S. ex rel. Carter v. Halliburton*,
    19 F. Supp. 3d 655 (E.D. Va. 2014) ........................................................................ 14

*U.S. ex rel. Hyatt v. Northrop Corp.*,
    91 F.3d 1211 (9th Cir. 1996) ...................................................................................... 9

*United States ex rel. Shea v. Cellco P'ship*,
    863 F.3d 923 (D.C. Cir. 2017) .............................................................................. 4, 14

*United States ex rel. Wood v. Allergan, Inc.*,
    246 F. Supp. 3d 772 (S.D.N.Y. 2017) .............................................................. *passim*

*United States ex rel. Wood v. Allergan, Inc.*,
    899 F.3d 163 (2d Cir. 2018) .................................................................................... 3, 4

*United States v. All Funds Distributed to, or o/b/o Weiss*,
    345 F.3d 49 (2d Cir. 2003) ........................................................................................ 8

*United States v. Kwai Fun Wong*,
    135 S. Ct. 1625 (2015) .............................................................................................. 10

*Veltri v. Building Service 32B-J Pension Fund*,
    393 F.3d 318 (2d Cir. 2004) .................................................................................. 8, 13

*Warren v. Garvin*,
    219 F.3d 111 (2d Cir. 2000) ...................................................................................... 8

*Yahraes v. Rest. Assocs. Events Corp.*,
    No. 10-cv-935, 2011 WL 844963 (E.D.N.Y. Mar. 8, 2011) ...................................... 12

*Young v. United States*,
    535 U.S. 43 (2002) .................................................................................................... 14

*Zerilli–Edelglass v. New York City Transit Auth.*,
    333 F.3d 74 (2d Cir. 2003) ........................................................................................ 9

**Statutes**

31 U.S.C. § 3729(a) ............................................................................................................. 6

31 U.S.C. § 3730(b) ...................................................................................................... 1, 2, 14

31 U.S.C. § 3730(h) ............................................................................................................. 6

31 U.S.C. § 3731(b) ............................................................................................................. 5

Plaintiff-Relator John Wood ("Wood" or "Relator") respectfully moves the Court to apply equitable tolling to the statute of limitations for the claims asserted in this action, which arise under the False Claims Act, 31 U.S.C. § 3730(b) *et seq.* and state statutory analogs ("FCA"). Those claims are brought by Relator on behalf of the United States and twenty-six state governments (collectively, the "States" and together with the United States, "the Governments"), for an alleged unlawful kickback scheme conducted by defendant Allergan, Inc. ("Allergan" or "Defendant") that resulted in hundreds of millions of dollars in false claims being submitted to and paid by the Governments. As demonstrated below, Relator's claims should be deemed to have been tolled during the period July 26, 2010 to October 3, 2018.

## **INTRODUCTION**

As this Court is familiar, Relator initially filed these claims under seal in this Court on July 26, 2010, *Wood ex rel. U.S., et al. v. Allergan*, No. 10-cv-5654 (S.D.N.Y.) ("*Wood I*"), at a time when it was unknown and unknowable that two skeleton FCA complaints were then pending under seal against Allergan. Those constituent complaints had been filed by putative relators in actions captioned *United States ex rel. Lampkin v. Johnson & Johnson, Inc*., No. 08-cv-5362 (D.N.J., filed Oct. 29, 2008) ("*Lampkin*") and *United States ex rel. Caryatid, LLC v. Allergan, Inc*., No. 10-cv-46 (D.D.C., filed Jan. 11, 2010) ("*Caryatid*"). The *Lampkin* and *Caryatid* cases were thereafter dismissed, on December 14, 2012 and January 23, 2012, respectively, without ever being substantively litigated or even served. In *Wood I*, the U.S. Department of Justice sought from this Court, and received, numerous extensions of the seal. After remaining under seal for nearly six years, the United States declined intervention, and *Wood I* was unsealed on March 21, 2016. Dkt. 24. Wood then filed a Second Amended Complaint on March 21, 2016 (*Wood I*, Dkt. 27) and a Third Amended Complaint ("TAC") on May 23, 2016 (*Wood I*, Dkt. 38).

Allergan moved to dismiss the TAC in *Wood I* on August 4, 2016, arguing that, among other things, the TAC failed to state a claim, failed to plead with particularity as required by Fed. R. Civ. P. 9(b), and violated the FCA's "public disclosure" and "first-to-file" bars. As for the first-to-file argument, Allergan contended that an incurable violation resulted because *Wood I* was initially filed when a related case, *Lampkin*, was still pending, *albeit* under seal, and as a result dismissal was required pursuant to 31 U.S.C. § 3730(b)(5) (providing that "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action").

On March 31, 2017, in an 89-page opinion, the Court sustained Relator Wood's claims by denying almost in full the comprehensive motion to dismiss filed by Allergan. *United States ex rel. Wood v. Allergan, Inc*., 246 F. Supp. 3d 772, 798 (S.D.N.Y. 2017), *rev'd and remanded*, 899 F.3d 163 (2d Cir. 2018). In addressing Allergan's novel first-to-file argument, the Court agreed that *Wood I* was a related action to *Lampkin*. *Wood*, 246 F. Supp. 3d at 791.[1] However, the Court rejected Allergan's argument that this required the dismissal of *Wood I*, finding instead that Relator Wood had cured the first-to-file violation by filing an amended pleading (*i.e.*, the TAC) at a time after *Lampkin* and *Caryatid* were no longer pending. *Id.* at 799-800. The Court found that the position taken by Allergan "would not only frustrate Congress's goal of helping the Government fight fraud, but it would also provide a windfall to defendants in Allergan's position – *a particularly perverse outcome*, as nothing in the text or history of the first-to-file rule suggests that it was intended to benefit FCA defendants as opposed to the conscientious relator and, by extension, the Government." *Id.* at 798 (emphasis added). The Court then posited and answered

---

[1] The potential relatedness of *Caryatid* is not relevant in any event as it was both filed after *Lampkin* and dismissed before *Lampkin*.

question raised by the Supreme Court in *Kellogg Brown & Root Servs., Inc. v. U.S., ex rel. Carter*, 135 S. Ct. 1970 (2015): "'Why would Congress want the abandonment of an earlier suit to bar a later potentially successful suit that might result in a large recovery for the Government?' The answer is that it would not." *Wood I*, 246 F. Supp. 3d at 798 (quoting *Carter*, 135 S. Ct. at 1972). In denying Allergan's motion to dismiss, this Court concluded that: "In fact, it would be worse than a pointless informality, as it would – in light of the passage of time – effectively immunize Allergan from liability for what the Court must assume here was fraud. . . . [T]he Court concludes that the law does not require that perverse result." *Id*. at 800.

Following the Court's ruling in *Wood I*, Allergan filed an interlocutory appeal to the U.S. Court of Appeals for the Second Circuit, pursuant to 28 U.S.C. § 1292(b), in which it raised the issue of whether the FCA's first-to-file rule could be cured by amending or supplementing an existing complaint, even when the first-filed case was no longer pending. *United States ex rel. Wood v. Allergan, Inc*., 899 F.3d 163 (2d Cir. 2018). The Second Circuit resolved the issue by holding that "the first-to-file bar cannot be remedied by amending or supplementing the complaint." *Id*. at 166. Accordingly, the Second Circuit reversed this Court, and remanded the case for the TAC to be dismissed without prejudice. *Id.* However, in so ruling the Second Circuit further held that:

> It is very well possible that a future court would consider Wood's claim equitably tolled. It is not, however, a matter for this Court to consider at this time. Equitable tolling is not of concern in this case where the first-to-file bar, rather than the statute of limitations, is preventing Wood's claim from proceeding.

*Id.* at 174-75 (citing *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 932 (D.C. Cir. 2017)).[2] In a related amicus curiae filing, the United States similarly expressed the view that "relators whose suits are dismissed and refiled under circumstances like those here might be entitled to equitable tolling in the event the statute of limitations had run on their claims in the interim." *United States ex rel. Wood v. Allergan, Inc.*, No. 17-2191, Dkt. 57 at 6-7 (2d Cir.). The United States argued that:

> It may well be appropriate for courts to apply principles of equitable tolling when a relator must dismiss and refile his or her suit in circumstances like those here. Equitable tolling can be warranted where a party has acted diligently but some circumstance "beyond [the party's] control" has precluded timely filing. "Equitable tolling principles have been applied where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period."

*Id.*, Dkt. 57 at 17-18 (citations omitted).

On remand, in accord with the mandate of the Second Circuit, this Court dismissed *Wood I* without prejudice. *See Wood I*, Dkt. 140. Following the dismissal of *Wood I*, and in accord with the opinion issued by the Second Circuit, Relator Wood re-filed his claims under seal in the instant litigation ("*Wood II*") on October 25, 2018, *Wood II*, Dkt. 1. After the United States again declined intervention, the Court unsealed the Complaint on November 30, 2018, *Wood II*, Dkt. 2, and service was promptly made on Defendant Allergan. Pursuant to the Court's scheduling Order entered December 19, 2018 (*Wood II*, Dkt. 18), Allergan has until February 1, 2019, to file an Answer or otherwise respond to the Complaint.[3]

---

[2] In dismissing another FCA case on first-to-file grounds, the D.C. Circuit in *Shea* held that courts "have long invoked . . . equitable tolling to ameliorate the inequities that can arise from strict application of a statute of limitations." *Shea*, 863 F.3d at 932 (quoting *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 275 (D.C. Cir. 2003)).

[3] It is unknown whether Allergan will file an Answer at that time; however, the Court's March 31, 2017 ruling on the near-identical operative Complaint in *Wood I* addressed and rejected almost in full a comprehensive motion to dismiss filed by Allergan. Under the doctrines of collateral

The alleged Allergan kickbacks occurred between 2003 and 2011. *Wood II*, Dkt. 6, Complaint at ¶¶ 2-12, 149-157. As the Court ruled in *Wood I*, "the FCA's statute-of-limitations provision permitting claims to be brought for up to ten years depending on when the relevant facts are known or should be known to 'the official of the United States charged with responsibility to act,' 31 U.S.C. § 3731(b)(2), applies to actions brought by private relators." *Wood I*, 246 F. Supp. 3d at 834. *See* 31 U.S.C. ¶ 3731(b) (providing that the applicable statute of limitations may be calculated under subsection (1) or (2), whichever permits the longer time period). In any event, in order to pursue the claims alleged in *Wood II*, which were filed October 25, 2018, Relator seeks to rely on the doctrine of equitable tolling in order to avoid being foreclosed from seeking to vindicate these important claims on the behalf of the Governments. In these circumstances, Relator claims the statute of limitations applicable to *Wood II* should be considered to have been equitably tolled as of July 26, 2010, the date of the filed complaint in *Wood I*.

The extraordinary and unique circumstances of this case wholly accord with the requisites for equitable tolling, and basic fairness requires its application. Here, Relator Wood has not slept on his rights whatsoever, but has been more than "reasonably diligent" – indeed he has zealously

---

estoppel and law of the case, that ruling will presumably resolve most any, if not all, potential arguments as to pleading. *Accord Ranasinghe v. Kennell*, No. 16-cv-2170 (JMF), 2017 WL 384357, at *3 (S.D.N.Y. Jan. 25, 2017) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'"); *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 558, 570 (S.D.N.Y. 2017) ("Under the law-of-the-case doctrine, courts 'as a general matter will adhere to its own decision at an earlier stage of the litigation.'") (citation omitted); *In re Club Ventures Inv. LLC*, 507 B.R. 91, 100-01 (S.D.N.Y. 2014) (bankruptcy appeal; holding that "[t]hough [the Bankruptcy Judge's] ruling is not binding on this Court, the law of the case doctrine counsels against heedlessly revisiting prior rulings in a case. . . . [T]he law of the case doctrine is not a lack of authority but is an exercise of restraint in the court's discretion) (citing *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005)). This is particularly apt in *Wood II* where the parties, claims, allegations and Complaint remain the same as in *Wood I*.

pursued this litigation for nearly a decade. Respectfully, this Court should heed the suggestion of the Second Circuit and the United States in *Wood I* and apply equitable tolling to the claims asserted in *Wood II*, so that Relator Wood may be allowed to seek justice for the massive fraud laid bare in the underlying Complaint and so that the Governments might ultimately receive redress for the serious fraud alleged.

## **FACTUAL BACKGROUND**

Wood is a former Allergan sales representative who promoted the company's eyecare drugs from 2008 until 2010, when he was fired unlawfully for blowing the whistle on fraud at the company. In his Complaint (*Wood II*, Dkt. 6), Wood alleges that Allergan caused the submission of false claims; made, used or caused to be made or used, false records or statements material to false or fraudulent claims; conspired to do the same; and unlawfully terminated Wood in retaliation. *See* 31 U.S.C. §§ 3729(a), 3730(h), and state analogues. Specifically, Wood alleges that, from at least 2003 until 2011, Allergan engaged in a kickback scheme that was intended to increase – and did increase – prescriptions and corresponding improper reimbursement for its eyecare drugs, including Acular®, Acular LS®, Acuvail®, Pred Forte®, Zymar® and Zymaxid®. The kickback scheme used Allergan-provided free Custom Care Kits, drug samples, customized patient instruction sheets, and customized pre-printed prescription pads to induce physicians to prescribe Allergan drugs to their cataract patients, most of whom were Medicare or Medicaid recipients. *See, e.g.*, Dkt. 6, Complaint at ¶¶ 46, 104-05, 129.[4]

Allergan executives were aware of, and encouraged, the provision of these free goods in exchange for the prescription of Allergan drugs. ¶¶ 129-140. Wood and his sales colleagues were directed by Allergan executives to "leverage" free drug samples, free customer care kits, and free

---

[4] Citations to the Complaint in *Wood II* are hereafter referenced as "¶ __."

goods such as office supplies in order to drive Allergan's sales and were further directed "to make sure [Allergan sales representatives] are getting a return for our investment." ¶ 132. "For the custom care kits, Allergan sales representatives worked with ophthalmologist offices nationwide to determine which of twelve different versions of the kit each office preferred to receive pursuant to a signed 'Custom Care Kit Agreement.'" ¶¶ 141, 145. "Pursuant to these Custom Care Kit Agreements, Allergan provided well over 100 million dollars' worth of free drug samples to physicians." ¶¶ 152-56 (detailing nearly 150 million dollars' worth of samples distributed during a single six-month period).[5]

In 2008, Allergan explained to its sales force that it had to terminate its massive Custom Care Kit kickback scheme because it violated the law. As Allergan candidly admitted in a PowerPoint presentation given to its sales force: "[P]hysician's acceptance of free kits can be interpreted as being in violation of Federal Anti-Kickback statutes." ¶ 250. Yet Allergan did not stop the kickbacks completely; Allergan just began to provide these same inducements under a new name: "Sample Shipment Agreements." ¶¶ 171-195.

In an October 19, 2009 email, Wood's Manager Jon Weidner sent his team a list of "Best Practices" prepared by senior management, with the clear message that the team was to ensure they were getting prescriptions in return for the free "resources" (*i.e.*, kickbacks): "There may come a time when the resources you provide to an office don't have an ROI [return on investment], so when do you pull out?" ¶ 133. Along those lines, they were to "[a]ffix a dollar amount to what

---

[5]  The Complaint identifies specific doctors to whom Allergan paid the kickbacks; the dates and amounts of the kickbacks; specific prescriptions of Allergan drugs the doctors wrote as a result of those kickbacks; and the amounts the Medicare and Medicaid programs paid to reimburse those prescriptions. ¶¶ 129-140.

you provide in terms of sampling and demonstrate the cost to the office indicating that you want to help the office but you need to see [prescriptions] for acuvail and/or zymar [sic]." ¶ 133.

Finally, in June 2010, Allergan's management announced it would be ceasing sampling activity altogether. At that time, Dave LeCause, Vice President of US Eye Care, told the entire sales force the company had decided to "change the way we do business so Allergan is not giving the appearance of engaging in any *quid pro quo* . . . . Things in the industry are not like they used to be." ¶ 189. The response by Allergan's sales teams to this announcement confirms that free goods were valuable to induce physicians to prescribe Allergan products. Relator Wood's District Manager Weidner told his team on June 22, 2010, that Allergan management "no longer want us nor should we be doing any kind of *quid pro quo* type of stuff . . . . Those days are gone . . . ." ¶ 194. One of Weidner's sales representatives, Kate Bergan, responded that free samples had been a "monster": "I mean, this monster was created a long time before any of us got here, and it's been bit by bit chipped away." *Id.* Another sales representative responded: "Right, for all of us that have been around for a while, this was the way, the law of the land." *Id.*

## ARGUMENT

"Statutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for [his] lateness in filing." *Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004). "'Equitable tolling . . . permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity,' *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 223 (2d Cir. 2002) (quoting *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000)), even when the limitations period would otherwise have expired." *United States v. All Funds Distributed to, or o/b/o Weiss*, 345 F.3d 49, 54 (2d Cir. 2003). "Judicial power to toll statutes of limitations arises from an exercise of a court's equity powers, traditionally used to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute

legal rules.'" *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 261, 271 (S.D.N.Y. 2014) (quoting *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 108 (2d Cir. 2013)). "'[C]ourts do not apply [equitable tolling's] requirements mechanistically,' and 'the exercise of a court's equity powers must be made on a case-by-case basis,' mindful 'that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.'" *Kassman v. KPMG LLP*, No. 11-cv-3743 LGS, 2015 WL 5178400, at *5 (S.D.N.Y. Sept. 4, 2015) (quoting *Harper v. Ercole*, 648 F.3d 132, 136 (2d Cir. 2011)); *accord Holland v. Florida*, 560 U.S. 631, 650 (2010). "'The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff.'" *Roundtree v. City of New York*, No. 15-cv-6582-GHW, 2018 WL 443751, at *4 (S.D.N.Y. Jan. 16, 2018) (quoting *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)). The application of equitable tolling is left to the discretion of the Court. *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995).

"'When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period [he] seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" *Roundtree*, 2018 WL 443751, at *3 (quoting *Zerilli–Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (internal quotation marks omitted)). "As a general rule, equitable tolling is read into every statute of limitations," including the FCA. *U.S. ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1216 (9th Cir. 1996). *See also, e.g.*, *U.S. ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 519 (6th Cir. 2007).

Here, the Court should apply equitable tolling to the statute of limitations for Relator's FCA claims, because, as demonstrated below: 1) Wood "acted with reasonable diligence"

throughout the pendency of the *Lampkin*, *Wood I* and *Wood II* cases; and 2) Wood has demonstrated that the circumstances at issue are "so extraordinary that the doctrine should apply." To find that FCA statute of limitations is not equitably tolled in such unique and compelling circumstances as these would most certainly result in manifest injustice.

## I.   Relator Wood Has More Than Acted with Reasonable Diligence

"'Equitable tolling requires a party to pass with reasonable diligence through the period it seeks to have tolled.'" *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d at 271 (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)). However, as the Supreme Court has taught, "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' *see, e.g.*, *Lonchar* [*v. Thomas*], 517 U.S. [314,] 326 [(1996)], not 'maximum feasible diligence,' *Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008) (quoting *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004))." *Holland v. Florida*, 560 U.S. at 653. Through application of equitable tolling, "a court usually may pause the running of a limitations statute in private litigation when a party has pursued his right diligently but some extraordinary circumstance prevents him from meeting a deadline." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1631 (2015).

Here, there can be no legitimate doubt that Wood has pursued his rights diligently, especially where extraordinary circumstances prevented him from filing his claims in *Wood II* within the statutory limitations period. Indeed, Relator has diligently pursued his claims throughout the entire pendency of the *Lampkin*, *Caryatid* and *Wood I* actions. For reference, the following charts summarizes the filings and dismissals of those actions:

| Case Name | Filed Date | Unsealed Date | Dismissal Date |
|---|---|---|---|
| *Lampkin* | October 29, 2008 | February 21, 2012 | December 14, 2012 |
| *Caryatid* | January 11, 2010 | July 27, 2011 | January 23, 2012 |
| *Wood I* | July 26, 2010 | March 21, 2016 | October 3, 2018 |
| *Wood I* (second amended complaint) | March 21, 2016 | n/a | October 3, 2018 |
| *Wood I* (third amended complaint) | May 23, 2016 | n/a | October 3, 2018 |
| *Wood II* | October 25, 2018 | November 30, 2018 | n/a |

According to the Second Circuit's 2018 ruling in *Wood I*, Relator Wood was statutorily barred from filing his FCA claims from October 29, 2008 until December 14, 2012 – *i.e.*, during the pendency of the *Lampkin* action. However, without having knowledge of the sealed *Lampkin* complaint (and without the benefit of the Second Circuit's 2018 interpretation of the FCA's first-to-file rule), Relator Wood filed his Complaint in *Wood I* on July 26, 2010. Relator then assisted the governmental entities in their investigations during the next six years while *Wood I* remained under seal. During that period, the Court granted several requests for extensions of the FCA seal. Up until the 2018 ruling of first impression by the Second Circuit, Relator reasonably believed that he had filed and pursued his claims in compliance with the FCA. Indeed, this Court made the same conclusion based on the then-status of the law. *Wood I*, 246 F. Supp. 3d at 834 (rejecting dismissal based on violation of the first-to-file bar, acknowledging FCA's ambiguities: "[T]o borrow the *Carter* Court's words again, the FCA's '*qui tam* provisions present many interpretive challenges, and it is beyond [the Court's] ability in this case to make them operate together smoothly like a finely tuned machine.'"). Following the dismissal of *Wood I*, Relator continued to act with reasonable diligence in re-filing his claims as *Wood II*, seeking to ascertain whether the United

States would intervene and then serving the Complaint on Allergan following the lifting of the seal after the United States advised of its decision not to intervene. Relator has clearly met the first prong for the application of equitable tolling.

## II.     The Extraordinary Circumstances Here Wholly Warrant Equitable Tolling

"To be eligible for equitable tolling, a petitioner must demonstrate 'extraordinary circumstances beyond his control' that prevented him from timely filing his petition." *Harper v. Ercole*, 648 F.3d at 137 (quoting *Baldayaque v. United States*, 338 F.3d 145, 151 (2d Cir. 2003) (internal quotation marks omitted)). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Id.* (citing *Bolarinwa v. Williams*, 593 F.3d 226, 231-32 (2d Cir. 2010); *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)). Significant delays attributable to the court may constitute "extraordinary circumstances." *Kassman v. KPMG LLP*, No. 11-cv-3743- LGS, 2015 WL 5178400, at *4 (S.D.N.Y. Sept. 4, 2015).[6]

"Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the

---

[6] *See also, e.g., Hart v. Crab Addison*, No. 13-cv-6458, 2015 WL 365785, at *5 (W.D.N.Y. Jan. 27, 2015) (holding that "equitable tolling may be appropriate when a significant delay in ruling on an FLSA motion for conditional certification is attributable to the Court and not the parties," where "the delay . . . may adversely affect the rights of [collective] members who may have no notice of th[e] lawsuit"); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170-71 (S.D.N.Y. 2014) (equitable tolling as of date of filing of conditional certification motion which took seven months to decide); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (equitable tolling as of date of filing of conditional certification motion which took four months to decide); *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-cv-935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) (equitable tolling as of the dates of service and refiling of conditional certification motion, where-despite "no trickery or wrongdoing," defendants' actions "frustrated plaintiffs' diligent attempts to ensure that claims did not expire"); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199-200 (S.D.N.Y. 2006) (equitable tolling where "the Court directed Plaintiff after he had filed his Complaint to postpone any motions for collective or class action until after its decision regarding summary judgment"); *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 860-61 (N.D. Ill. 2013) (collecting cases).

circumstances." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d at 322). The Supreme Court has long held that equitable tolling is appropriate "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period[.]" *Haekal v. Refco, Inc.*, 198 F.3d 37, 43 (2d Cir. 1999) (limitations period tolled where administrative complaint was defective for failure to post bond) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). *See also, e.g.*, *Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 434-36 (1965) (plaintiff timely filed complaint in wrong court); *Herb v. Pitcairn*, 325 U.S. 77 (1945) (same); *accord Morris v. City of New York*, No. 98-cv-6607(HB), 2003 WL 22533399, at *3 (S.D.N.Y. Nov. 7, 2003) (allowing equitable tolling where complaint named incorrect defendant). "[S]uch tolling has been allowed even where the unfairness that would otherwise result was not the fault of the defendant." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. at 96.

Here, the defective nature of the operative TAC in *Wood I* based on the first-to-file violation requirement was a point of law not previously addressed by the Second Circuit. Thus, until the Second Circuit's 2018 decision in this case of first impression, the defective nature of the Complaint was not apparent to counsel *or to this Court*, which denied Allergan's motion to dismiss based on Relator's ostensible cure of the first-to-file violation by amending his pleading in *Wood I* after the dismissal of the *Lampkin* and *Caryatid* actions. Relator Wood – and by extension, the Governments – should not be punished for acting with reasonable diligence in the circumstances, even if those actions ultimately proved to be in error. The extraordinary nature of these circumstances is highlighted by the fact that the interpretation of the FCA made by the Second Circuit has led to the very "perverse result" that this Court cautioned against in its own decision on that same point of law. *See Wood I*, 246 F. Supp. 3d at 798, 800. Such circumstances warrant equitable relief. *Accord Haekal*, 198 F.3d at 43 (equitable tolling applied where complaint was

defective for failure to file a bond within the time limits imposed) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. at 96); *Burnett*, 380 U.S. at 434-36 (equitable tolling applied where plaintiff timely filed complaint in wrong court).

Finally, contrary to assertions by Allergan in *Wood I*, that equitable tolling should not be available during the period after *Lampkin* had been dismissed because Wood might have then voluntarily dismissed *Wood I* and filed a new case, such is not accurate. Any dismissal of *Wood I* would have required the approval of the United States and the States, and of the Court, 31 U.S.C. § 3730(b)(1). In 2013, the Department of Justice was in the middle of a six-year investigation during which Wood could not have filed *Wood II*. Even after the Governments filed their notices of non-intervention, Wood still could not have dismissed *Wood I* and filed *Wood II* without permission of the Governments and the Court. From the filing of *Lampkin* in 2010 until its dismissal in 2012, Relator Wood was barred by the FCA from making any filing before 2013. Once those cases were dismissed, Wood still could not file any new, related case during the pendency of his own action in *Wood I*, which was still under investigation and only came out of seal on March 21, 2016.[7] *Accord U.S. ex rel. Shaw v. Cellco Partnership*, 863 F.3d at 928-29 (plaintiff could not file a second FCA action related to a pending action he had brought); *U.S. ex rel. Carter v. Halliburton*, 19 F. Supp. 3d 655, 663 (E.D. Va. 2014) (same). *Accord Young v. United States*, 535 U.S. 43 (2002) (applying equitable tolling where prior bankruptcy proceeding prevented assertion of tax claims by IRS).

---

[7] Even if *Wood I* could have been dismissed on March 21, 2016, and *Wood II* were filed then, much of the claims were already expired because the unlawful practices ceased during the last half of 2010 and the statute of limitations is normally six years, but can sometimes be extended to 10 years.

## **CONCLUSION**

Relator Wood has acted with reasonable diligence at all times in his pursuit of this litigation, especially where extraordinary circumstances prevented him from filing his claims in *Wood II* within the statutory limitations. As demonstrated, Relator's claims should be deemed to have been tolled during the period July 26, 2010 (when *Wood I* was initially filed) to October 3, 2018 (when *Wood I* was dismissed). Absent equitable tolling, Relator's FCA claims would be effectively barred, resulting in the United States and the States losing their ability to recover damages for the serious claims of fraud allegedly perpetrated against them by Allergan. This is precisely the kind of injustice that can be, and should be, remedied by equitable tolling.

Dated:  January 25, 2019

Respectfully submitted,

 /s/  *Sherrie R. Savett*

Sherrie R. Savett (*admitted pro hac vice*)
Arthur Stock (*admitted pro hac vice*)
Lane L. Vines (*admitted pro hac vice*)
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Email:  ssavett@bm.net
             astock@bm.net
             lvines@bm.net
Tel.:  (215) 875-3000
Fax:  (215) 875-4604

   -and-

W. Scott Simmer (*pro hac vice to be filed*)
Baron & Budd, P.C.
600 New Hampshire Ave., NW, Suite 10A
Washington, DC 20037
Email:  ssimmer@baronbudd.com
Tel.:  (202) 333-4849
Fax:  (202) 337-1039

*Counsel for Plaintiff/Relator Wood*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 25, 2019, a true and correct of the foregoing document is

being served on the following in the manner listed below:

<u>**Via ECF Filing and First-Class Mail**</u>

Jeffrey S. Bucholtz
J. Emmett Murphy
King & Spalding LLP
1185 Avenue of the Americas, 35th Floor
New York, NY 10036

*Counsel for Defendant Allergan, Inc.*

<u>**Via First-Class Mail**</u>

Matthew Whitaker
Acting US Attorney General
US Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Joon H. Kim
Acting US Attorney
US Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007

Lawrence H. Fogelman
Assistant US Attorney
US Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007

Jennifer Cihon
Trial Attorney
US Department of Justice
Civil Fraud Section
600 E Street, N.W., Room 6906
Washington, D.C. 20004

Xavier Becerra
Attorney General
Department of Justice
Bureau of Medi-Cal Fraud and
    Elder Abuse
P.O. Box 944255
Sacramento, CA 94244-2550

George A. Codding
Senior Assistant Attorney General
Department of Law
Office of the Attorney General
1300 Broadway, 9th Floor
Denver, CO 80203

Robert B. Teitelman
Assistant Attorney General
Office of the Attorney General
55 Elm Street
Hartford, CT 06106-1774

Jane Drummey
Assistant Attorney General
Office of the Attorney General
Civil Enforcement Section
Civil Litigation Division
441 Fourth Street, Suite 650 North
Washington, D.C. 20001

Jeffrey H. Atwater
Chief Financial Officer
Dept. of Financial Services
Division of Consumer Services
200 East Gaines Street
Tallahassee, FL 32399-0300

Christopher Young
MFCU Director
Office of the Attorney General
333 Queen Street, 10th Floor
Honolulu, HI 96813

Curtis Hill
Attorney General
Office of the Attorney General
Indiana Government Center South
302 W. Washington Street, 5th Floor
Indianapolis, IN 46204

Mimi Hunley
Assistant Attorney General
Office of the Attorney General
P.O. Box 94005
Baton Rouge, LA 70804

David E. Tanay
MFCU Director
Office of the Attorney General
2860 Eyde Parkway
East Lansing, MI 48823

Kate Keller
MFCU Director
Office of the Attorney General
820 N. French Street, 5th Floor
Wilmington, DE 19801

James D. Varnado
MFCU Director
Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399

Chris Carr
Attorney General
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA 30334

Patrick Keenan
Medicaid Fraud Bureau Chief
Office of the Attorney General
100 W. Randolph Street, 12th Floor
Chicago, IL 60601

Lori Torress
Inspector General
Office of the Inspector General
315 W. Ohio Street, Room 104
Indianapolis, IN 46202

Maura Healey
Attorney General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108

Lori Swanson
Attorney General
Office of the Attorney General
1400 Bremer Tower
445 Minnesota Street
St. Paul, MN 55101-2131

Kenneth E. Varns
Assistant Attorney General
Department of Justice
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401

Karin M. Eckel
MFCU Director
Office of the Attorney General
Medicaid Fraud Control Unit
33 Capitol Street
Concord, NH 03301-6397

Christopher Porrino
Attorney General
NJ Division of Criminal Justice
Medicaid Fraud Control Unit – FCA Unit
25 Market Street, Fourth Floor, West Wing
P.O. Box 094
Trenton, NJ 08625-0094
Attn:  DAG Oriana Nadraga

Marie Spencer
Special Assistant Attorney General
Office of the Attorney General
Medicaid Fraud Control Unit
120 Broadway, 13th Floor
New York, NY 10271

Mark N. Kemberling
MFCU Director
Office of the Attorney General
555 E. Washington Avenue, Suite 3900
Las Vegas, NV 89101

Hector Balderas
Attorney General
Office of the Attorney General
P.O. Drawer 1508
Santa Fe, NM 87504-1508

F. Edward Kirby, Jr.
Assistant Attorney General
Department of Justice
Medicaid Fraud Investigations
5505 Creedmoor Road, Suite 300
Raleigh, NC 27612

James F. Dube
MFCU Director
Office of the Attorney General
150 S. Main Street
Providence, RI 02903

Timothy P. Harlan
Assistant Attorney General
Office of the Attorney General
425 5th Avenue N
P.O. Box 20207
Nashville, TN 37202-4015

Kerry Ascher
Assistant Attorney General
Office of the Attorney General
Capitol Station
P.O. Box 12548
Austin, TX 78711-2548

Mark Herring
Attorney General
Office of the Attorney General
900 East Main Street
Richmond, VA 23219

Timothy Samuelson
MFCU Director
Office of the Attorney General
P.O. Box 7857
Madison, WI 53707-7857

**<u>Via Email and First-Class Mail</u>**

Niki S. Batt
Assistant Attorney General
Oklahoma Office of the Attorney General
Attn: Medicaid Fraud Control Unit
313 NE 21st Street
Oklahoma City, OK 73105
Email: FCA@oag.ok.gov

*/s/ Lane L. Vines*
Lane L. Vines