**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES *ex rel.* JOHN A. WOOD, et al. <br><br> Plaintiffs, <br><br> v. <br><br> ALLERGAN, INC., <br><br> Defendant. | **No. 1:18-cv-09857-JMF** <br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF ALLERGAN, INC.'S**
**MOTION TO DISMISS**

Jeffrey S. Bucholtz, *Pro Hac Vice*
Gabriel Krimm, *Pro Hac Vice**
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 626-2907
Fax: (202) 626-3737
jbucholtz@kslaw.com
gkrimm@kslaw.com

John Emmett Murphy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100
Fax: (212) 556-2222
jemurphy@kslaw.com

*Admitted only in Tennessee. Practice in
the District of Columbia supervised by
principals of the Firm.

*Counsel for Defendant Allergan, Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND .............................................................................................................. 1

LEGAL STANDARDS ..................................................................................................... 2

ARGUMENT .................................................................................................................... 3

I.      THE FALSE CLAIMS ACT'S FIRST-TO-FILE BAR REQUIRES
        DISMISSAL OF THIS ACTION. ......................................................................... 3

II.     WOOD HAS FAILED TO STATE TIMELY FRAUD CLAIMS UNDER
        THE FALSE CLAIMS ACT. ................................................................................ 8

        A.      Wood's Claims On Behalf Of The United States Are Time-Barred. ............. 8

        B.      Equitable Tolling Is Inconsistent With The False Claims Act. ...................... 9

                1.      The FCA's Purpose Counsels Against Tolling. ................................ 10

                2.      The FCA's Remedial Scheme Rebuts The Presumption Of
                        Tolling. ............................................................................................. 11

                3.      The FCA's Timeliness Provisions Prohibit Wood's Tolling
                        Rule. ................................................................................................. 12

        C.      There Is Nothing Inequitable About The Circumstances Of This
                Case. ......................................................................................................... 16

                1.      The Government Has Suffered No Inequities. ................................. 16

                2.      Wood Has Suffered No Inequities. ................................................. 17

III.    WOOD HAS FAILED TO STATE A TIMELY RETALIATION CLAIM. ........... 19

        A.      Wood's Retaliation Claim Is Time-Barred. ................................................ 19

        B.      Wood's Retaliation Claim Does Not Warrant Equitable Tolling. ............... 19

IV.     THE COURT SHOULD DISMISS WOOD'S STATE-LAW CLAIMS AS
        WELL. ............................................................................................................... 21

        A.      State-Law Time Bars Apply To The State-Law Claims. ............................. 21

        B.      Many Of The State Limitations Periods Have Run. .................................... 22

C.    Federal Principles Of Equitable Tolling Do Not Apply To State-Law
      Claims. ...................................................................................................... 23

D.    State-Law Liability Cannot Predate The Various State False Claims
      Statutes. .................................................................................................... 23

E.    Changes To Texas Law Limit Wood's Claims On Behalf Of Texas. ........... 24

CONCLUSION .................................................................................................................. 24

# TABLE OF AUTHORITIES

**CASES**

*Acierno v. Barnhart*,
475 F.3d 77 (2d Cir. 2007) ................................................... 10, 11, 15, 16

*Andrus v. Glover Const. Co.*,
446 U.S. 608 (1980) ........................................................................... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................. 2

*Axel Johnson, Inc. v. Arthur Andersen & Co.*,
6 F.3d 78 (2d Cir. 1993) ...................................................................... 4

*Barrett v. United States*,
689 F.2d 324 (2d Cir. 1982) .............................................................. 14

*Bennett v. Artuz*,
199 F.3d 116 (2d Cir. 1999) ............................................................ 4, 5

*Burnett v. N.Y. Cent. R. Co.*,
380 U.S. 424 (1965) ............................................................... 9, 10, 18

*Cantor Fitzgerald Inc. v. Lutnick*,
313 F.3d 704 (2d Cir. 2002) .............................................................. 21

*Carey v. Saffold*,
536 U.S. 214 (2002) ............................................................................. 4

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010) ............................................... 21

*Cochise Consultancy Inc. v. U.S. ex rel. Hunt*,
139 S. Ct. 566 (2018) ........................................................................... 9

*Colgate Palmolive Co. v. S/S Dart Canada*,
724 F.2d 313 (2d Cir. 1983) .............................................................. 21

*Commerzbank AG v. U.S. Bank Nat'l Ass'n.*,
277 F. Supp. 3d 483 (S.D.N.Y. 2017) ............................................... 21

*Cook Cty. v. U.S. ex rel. Chandler*,
538 U.S. 119 (2003) ........................................................................... 10

*CTS Corp. v. Waldburger*,
573 U.S. 1 (2014) ............................................................................... 13

*Diffley v. Allied–Signal, Inc.*,
921 F.2d 421 (2d Cir. 1990) .............................................................. 21

*Ellul v. Congregation of Christian Bros.*,
774 F.3d 791 (2d Cir. 2014) .......................................................... 2, 14

*Erie R.R. Co. v. Tompkins,*
    304 U.S. 64 (1938) ................................................................................................ 21

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.,*
    712 F.3d 136 (2d Cir. 2013) ................................................................... 13, 14, 19

*Gabelli v. SEC,*
    568 U.S. 442 (2013) ............................................................................................. 14

*Garcia v. Portuondo,*
    334 F. Supp. 2d 446 (S.D.N.Y. 2004) .............................................................. 10

*Glob. Fin. Corp. v. Triarc Corp.,*
    715 N.E.2d 482 (N.Y. 1999) .............................................................................. 22

*Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,*
    545 U.S. 409 (2005) ............................................................................................. 20

*Guar. Tr. Co. of N.Y. v. York,*
    326 U.S. 99 (1945) ............................................................................................... 21

*Holland v. Florida,*
    560 U.S. 631 (2010) ............................................................................................... 9

*Irwin v. Dep't of Veterans Affairs,*
    498 U.S. 89 (1990) ............................................................................ 16, 17, 18, 20

*Jaen v. Sessions,*
    899 F.3d 182 (2d Cir. 2018) ................................................................................ 5

*Johnson v. Nyack Hosp.,*
    86 F.3d 8 (2d Cir. 1996) ............................................................................... 17, 20

*Johnson v. Nyack Hosp.,*
    891 F. Supp. 155 (S.D.N.Y. 1995) .................................................................... 17

*Johnson v. Pastoriza,*
    818 N.W.2d 279 (Mich. 2012) ........................................................................... 24

*Kassman v. KPMG LLP,*
    No. 11 CIV. 03743 LGS, 2015 WL 5178400 (S.D.N.Y. Sept. 4, 2015) .................. 19

*Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter,*
    135 S. Ct. 1970 (2015) .................................................................................. 3, 5, 6

*Klaxon Co. v. Stentor Electric Mfg. Co.,*
    313 U.S. 487 (1941) ............................................................................................. 21

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
    501 U.S. 350 (1991) ............................................................................................. 15

*Lands' End, Inc. v. City of Dodgeville,*
    881 N.W.2d 702 (Wis. 2016) ............................................................................. 24

*Lawrence v. Florida*,
  549 U.S. 327 (2007)..................................................................................................... 3, 4

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  597 F.3d 84 (2d Cir. 2010) ................................................................................................ 13

*Mackenzie v. A. Engelhard & Sons Co.*,
  266 U.S. 131 (1924)............................................................................................................ 4

*Merck & Co., Inc. v. Reynolds*,
  559 U.S. 633 (2010)........................................................................................................... 14

*Mottahedeh v. United States*,
  794 F.3d 347 (2d Cir. 2015) .............................................................................................. 16

*Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*,
  239 F. Supp. 3d 761 (S.D.N.Y. 2017) ............................................................................... 17

*P. Stolz Family P'ship L.P. v. Daum*,
  355 F.3d 92 (2d Cir. 2004) ................................................................................................ 13

*Patraker v. Council of Env't*,
  No. 02-cv-7382 (LAK), 2003 WL 22336829 (S.D.N.Y. Oct. 14, 2003)............................. 18

*Pereira v. Sessions*,
  138 S. Ct. 2105 (2018)....................................................................................................... 14

*Plaut v. Spendthrift Farm, Inc.*,
  514 U.S. 211 (1995)........................................................................................................ 4, 6

*Ridenour v. Kaiser-Hill Co., LLC*,
  397 F.3d 925 (10th Cir. 2005) .................................................................................. 5, 7, 11

*Rite Aid of New York, Inc. v. 1199SEIU United HealthCare Workers E.*,
  334 F. Supp. 3d 568 (S.D.N.Y. 2017) ............................................................................... 18

*Searcy v. Philips Elecs. N. Am. Corp.*,
  117 F.3d 154 (5th Cir. 1997) ............................................................................................... 7

*Sierra Club v. Con-Strux, LLC*,
  911 F.3d 85 (2d Cir. 2018) .................................................................................................. 2

*St. Clair Nation v. City of New York*,
  928 N.E.2d 404 (N.Y. 2010)............................................................................................... 24

*State v. Green*,
  514 S.E.2d 724 (N.C. 1999)............................................................................................... 24

*Swift v. United States*,
  318 F.3d 250 (D.C. Cir. 2003)............................................................................................. 7

*Thea v. Kleinhandler*,
  807 F.3d 492 (2d Cir. 2015) .............................................................................................. 22

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
501 F.3d 493 (6th Cir. 2007) ........................................................................ 17

*U.S. ex rel. Carter v. Halliburton Co.*,
No. 1:10-cv-864 JCC/TCB, 2011 WL 2118227 (E.D. Va. May 24, 2011) ........................... 5, 6

*U.S. ex rel. Deering v. Physiotherapy Assocs., Inc.*,
601 F. Supp. 2d 368 (D. Mass. 2009) .................................................................. 20

*U.S. ex rel. Dep't of Def. v. CACI Int'l Inc.*,
953 F. Supp. 74 (S.D.N.Y. 1995) ........................................................................ 7

*U.S. ex rel. Eisenstein v. City of New York*,
556 U.S. 928 (2009) ................................................................................. 5, 7

*U.S. ex rel. Erskine v. Baker*,
213 F.3d 638 (table), 2000 WL 554644 (5th Cir. April 13, 2000) .......................................... 14

*U.S. ex rel. Fair Lab. Practices Assoc. v. Quest Diagnostics Inc.*,
734 F.3d 154 (2d Cir. 2013) ........................................................................ 7, 16

*U.S. ex rel. Hyatt v. Northrop Corp.*,
91 F.3d 1211 (9th Cir. 1996) ........................................................................... 13

*U.S. ex rel. Killingsworth v. Northrop Corp.*,
25 F.3d 715 (9th Cir. 1994) ........................................................................ 5, 7

*U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*,
777 F. Supp. 195 (N.D.N.Y. 1991) ...................................................................... 9

*U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*,
985 F.2d 1148 (2d Cir. 1993) ........................................................................ 9, 14

*U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs, Inc.*,
149 F.3d 227 (3d Cir. 1998) ............................................................................ 5

*U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
472 F.3d 702 (10th Cir. 2006) .................................................................. 13, 14, 19

*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*,
14 F.3d 645 (D.C. Cir. 1994) ........................................................................... 12

*U.S. ex rel. Tahlor v. AHS Hosp. Corp.*,
No. 2:08-CV-02042 WJM, 2013 WL 5913627 (D.N.J. Oct. 31, 2013) ................................. 20

*U.S. ex rel. Wood v. Allergan, Inc.*,
246 F. Supp. 3d 772 (S.D.N.Y. 2017) .......................................................... *passim*

*U.S. ex rel. Wood v. Allergan, Inc.*,
899 F.3d 163 (2d Cir. 2018) .................................................................. *passim*

*United States v. Beggerly*,
524 U.S. 38 (1998) ..................................................................................... 10

*United States v. Brockamp*,
  519 U.S. 347 (1997)................................................................. 9, 12, 13

*United States v. Everglades Coll., Inc.*,
  855 F.3d 1279 (11th Cir. 2017) .......................................... 5, 7

*United States v. Uzzell*,
  648 F. Supp. 1362 (D.D.C. 1986) ............................................ 14

*United States v. Wells Fargo Bank, N.A.*,
  972 F. Supp. 2d 593 (S.D.N.Y. 2013) ........................................ 9

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*,
  529 U.S. 765 (2000)........................................... 7, 11, 16, 18

*Vincent v. Money Store*,
  915 F. Supp. 2d 553 (S.D.N.Y. 2013) ..................................... 23

*Watson v. United States*,
  865 F.3d 123 (2d Cir. 2017) ...................................................... 16

*Williams v. Walsh*,
  558 F.2d 667 (2d Cir. 1977) ...................................................... 18

## STATUTES

28 U.S.C. § 1367(c) ............................................................................. 23

28 U.S.C. § 2244(d) .............................................................................. 4

31 U.S.C. § 3729(a) ......................................................................... 7, 11

31 U.S.C. § 3730(a) ............................................................................ 17

31 U.S.C. § 3730(b) .................................................................... *passim*

31 U.S.C. § 3730(c) .............................................................................. 7

31 U.S.C. § 3730(d) ......................................................................... 7, 11

31 U.S.C. § 3730(e) ............................................................................ 11

31 U.S.C. § 3730(h) ............................................................................ 19

31 U.S.C. § 3731(b) .................................................................... *passim*

31 U.S.C. § 3732(b) ............................................................................ 21

740 Ill. Comp. Stat. 175/5(b) .............................................................. 22

Cal. Gov. Code § 12654(a) .................................................................. 22

Colo. Rev. Stat. § 25.5-4-307(1) ......................................................... 22

Conn. Gen. Stat. § 4-285 ...................................................................... 22

D.C. Code § 2-381.05(a) ...................................................................... 22

Del. Code Ann. tit. 6, § 1209(a)..................................................................22

Fla. Stat. § 68.089(1)............................................................................22

Ind. Code § 5-11-5.5-9...........................................................................22

La. Stat. Ann. § 46:439.1(B)......................................................................22

Mass. Gen. Laws ch. 12 § 5K(1) ...................................................................22

Mich. Comp. Laws § 400.614(1) ..................................................................22

Michigan Medicaid False Claims Act, Mich. Comp. Laws § 400.610a *et seq.* (effective Jan. 3, 2006) ...........................................................................24

Minn. Stat. § 15C.11(a)..........................................................................22

Mont. Code Ann. § 17-8-404(1) ..................................................................22

N.C. Gen. Stat. § 1-615(a) .......................................................................22

N.J. Stat. Ann. § 2A:32C-11 ......................................................................22

Nev. Rev. Stat. § 357.170(1)......................................................................22

New York State False Claims Act, N.Y. Local Finance Law, art. 13, § 187 *et seq.* (effective April 1, 2007) .........................................................................24

North Carolina False Claims Act, N.C. Gen. Stat. § 1-615 *et seq.* (effective Jan. 1, 2010).........24

Okla. Stat. tit. 63, § 5053.6(B)....................................................................22

R.I. Gen. Laws § 9-1.1-5(b) .......................................................................22

Tenn. Code Ann. § 71-5-184(b)....................................................................22

Tex. Hum. Res. Code § 36.104(b) (2008)............................................................24

Va. Code Ann. § 8.01-216.9 ......................................................................22

Wisconsin False Claims for Medical Assistance Act (effective Oct. 27, 2007)............................24

## RULES

Fed. R. Civ. P. 12(b) ..............................................................................3

S. Ct. R. 13.1.....................................................................................2

## OTHER AUTHORITIES

Black's Law Dictionary (10th ed. 2014).............................................................3

N.Y. C.P.L.R. 202 (McKinney) .....................................................................21

## PRELIMINARY STATEMENT

John A. Wood brings this action on behalf of the United States and twenty-six states, despite all those governments' obvious lack of interest in pursuing his allegations of fraud. As Wood concedes, his complaint in this new action makes the same allegations and asserts the same claims as his first False Claims Act ("FCA") action, which itself was terminated for redundancy. *See* Compl. at 6; *U.S. ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 169–70 (2d Cir. 2018) ("*Wood I*"). Like its predecessor, this action should be dismissed. *First*, the FCA's "first-to-file bar" requires dismissal because Wood's prior action remained "pending" when he commenced this action. *Second*, and in any event, Wood's claims are untimely and there is no valid basis for his request for "equitable tolling." Compl. at 107–09.

## BACKGROUND

On July 26, 2010, Wood filed an FCA action alleging that Allergan had caused doctors and pharmacies to submit false claims to the federal government and several states. The United States, on whose behalf Wood sued, conducted a lengthy investigation of his allegations and then declined to intervene. *Id.* at 7. All the states on whose behalf Wood sued declined as well. *Id.* The Court then unsealed Wood's action, and Allergan sought dismissal under (among other grounds) the FCA's first-to-file bar, 31 U.S.C. § 3730(b)(5). Although the Court agreed that Wood had filed his action in violation of the first-to-file bar, it held that the subsequent dismissal of the first-filed action allowed Wood to proceed. *U.S. ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 792, 834 (S.D.N.Y. 2017) ("*Wood I*"). The Court recognized, however, that the proper interpretation of the first-to-file bar was subject to reasonable disagreement and certified its decision for interlocutory appeal. *Wood I*, Dkt. 124. The Second Circuit granted permission to appeal and held that "a claim is barred … if at the time the lawsuit was *brought* a related action was pending" and

"an amended or supplemental pleading cannot change [that] fact." *Wood I*, 899 F.3d at 172. It thus reversed and remanded for dismissal without prejudice. The Second Circuit's mandate issued on October 1, 2018, Dkt. 139, and this Court dismissed the action two days later, Dkt. 140.

The 90-day period to petition for Supreme Court review of the Second Circuit's August 9, 2018 decision was originally set to expire on November 7, 2018. *See* S. Ct. R. 13.1. On October 27, 2018, Wood applied for an extension of that deadline to January 4, 2019, stating that "counsel need[ed] … additional time to prepare the petition" and that "[t]his case ... provides the Court with an opportunity to resolve" a deepening circuit split regarding the first-to-file bar. *Wood I*, No. 18A448 (U.S.) at 4, 5. Justice Ginsburg granted Wood's application on October 29. *Id.* (docket). In the meantime, on October 25, Wood filed the instant complaint "in substantial, and effectively identical, form to that filed as the [third amended complaint] in the prior litigation." Compl. at 9.

In connection with the Court's certification of the interlocutory appeal, Allergan agreed to, and the Court entered, an order tolling limitations from May 4, 2017 until the issuance of the Second Circuit's mandate (which, as noted, occurred on October 1, 2018). Dkt. 128 (Order, May 18, 2017). Twenty-four days thus elapsed between the end of that tolling and the filing of this action on October 25, 2018. As a result, the relevant date for limitations purposes is May 28, 2017.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).

**ARGUMENT**

This Court should dismiss Wood's complaint. Because Wood brought this action while his earlier action was still pending, the FCA's first-to-file bar again compels dismissal. Wood's federal claims and most of his state-law claims also are untimely. Equitable tolling cannot save Wood's claims because applying equitable tolling would be inconsistent with the text, structure, and purpose of the FCA, and the equities do not warrant tolling in any event.[1]

I.     **The False Claims Act's First-To-File Bar Requires Dismissal Of This Action.**

The FCA forbids any "person other than the Government" from "bring[ing]" an FCA action "based on the facts underlying" a "related" and "pending [FCA] action." 31 U.S.C. § 3730(b)(5). As Wood himself asserts, the facts underlying this action are identical to the facts underlying Wood's earlier-filed action. *See* Compl. at 9. There can be no doubt, then, that this action is "related" to Wood's earlier action. *See, e.g.*, *Wood I*, 899 F.3d at 169. The first-to-file bar thus prohibits this action if Wood brought it while his previous action was "pending."

"Pending" has a well-understood meaning that the Court must apply in enforcing the first-to-file bar. *See Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter*, 135 S. Ct. 1970, 1978 (2015); *Lawrence v. Florida*, 549 U.S. 327, 331–34 (2007). According to that accepted meaning, an action is "pending" so long as it "[r]emain[s] undecided." *Carter*, 135 S. Ct. at 1978 (first alteration in original) (quoting Black's Law Dictionary 1314 (10th ed. 2014)). Where a lower court has issued a decision subject to further appeal, an action remains undecided—and therefore pending—"so long as an appeal is pending *or the time for filing an appeal has yet to lapse*." *Axel*

---

[1] This motion does not re-raise issues raised and decided against Allergan in the Court's decision on Allergan's motion to dismiss in *Wood I*. Allergan reserves the right to raise those and other defenses if this action proceeds beyond the pleading stage. *See* Fed. R. Civ. P. 12(b).

*Johnson, Inc. v. Arthur Andersen & Co.*, 6 F.3d 78, 84 (2d Cir. 1993) (emphasis added).  This is so even if no appeal ultimately occurs, as "the decision of an inferior court" does not become "the final word of the [judicial] department as a whole" until "the time for appeal has expired."  *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 227 (1995); *cf. Mackenzie v. A. Engelhard & Sons Co.*, 266 U.S. 131, 142–43 (1924) ("An appeal is a proceeding in the original cause and the suit is pending until the appeal is disposed of.").

The Supreme Court has consistently applied this meaning to other federal statutes.  In *Plaut*, for instance, the Court considered a new statute that Congress expressly made applicable to both "pending" and "dismissed" civil actions.  514 U.S. at 214.  In holding the latter application unconstitutional, the Court drew a sharp distinction between lower court dismissals still subject to appeal and those that had become final because the time to appeal had expired.  *See id.* at 227.  In so doing, it reaffirmed the principle that the *prospect* of further review renders a judgment susceptible to revision and thus maintains the pendency of an action.  *See id.*

The Court has ascribed that same meaning to Congress's use of "pending" in the federal habeas statute.  In that context, Congress expressly provided for tolling of the limitations period for a federal habeas petition while "a properly filed application for State post-conviction or other collateral review … is pending."  28 U.S.C. § 2244(d)(2).  In *Carey v. Saffold*, 536 U.S. 214 (2002), and again in *Lawrence*, the Court held that this language "naturally" tolls the limitations period until the petitioner's application "achieve[s] final resolution through the State's postconviction procedures."  *Lawrence*, 549 U.S. at 332 (second quotation quoting *Carey*, 536 U.S. at 220).  The Second Circuit has held that this includes the time within which a petitioner may seek discretionary review in a state's highest court, whether or not he has sought such review.  *See Bennett v. Artuz*, 199 F.3d 116, 119–21 (2d Cir. 1999); *see also id.* at 120–21 (collecting cases).

Because these interpretations of "pending" reflect its settled legal meaning, they apply equally to that term's use in the first-to-file bar. *See, e.g.*, *Carter*, 135 S. Ct. at 1978; *Jaen v. Sessions*, 899 F.3d 182, 187–88 (2d Cir. 2018); *U.S. ex rel. Carter v. Halliburton Co.*, No. 1:10-cv-864 JCC/TCB, 2011 WL 2118227, at *4 (E.D. Va. May 24, 2011). Adopted in 1986 alongside several other FCA amendments, the first-to-file bar aids in Congress's attempt to "shift the advantage back to the government in the fight against fraud" by encouraging relators to come forward promptly while at the same time discouraging duplicative *qui tam* actions. *Wood I*, 246 F. Supp. 3d at 797 (quoting *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs, Inc.*, 149 F.3d 227, 233–34 (3d Cir. 1998)); *see also Ridenour v. Kaiser-Hill Co., LLC*, 397 F.3d 925, 931 (10th Cir. 2005) (noting that the 1986 amendments "increased [the Government's] power to control *qui tam* actions"). Importantly, each FCA action carries the potential for the Government to recover until the action has run its full course. *See, e.g.*, *United States v. Everglades Coll., Inc.*, 855 F.3d 1279 (11th Cir. 2017) (affirming settlement between defendant and the Government despite relator's pursuit of appeal). And even where a lower court has ordered dismissal, the possibility of a Government recovery remains open, both because the relator may appeal (or petition for certiorari) if the Government has not intervened and because the Government may seek to intervene in order to appeal or even appeal without intervening. *See U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 931 n.2 (2009); *U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 720 (9th Cir. 1994) (considering Government's post-dismissal appeal to challenge settlement despite Government's non-intervention); *cf. Bennett*, 199 F.3d at 119–21 (holding that state post-conviction action remains "pending" so long as time remains to request leave to appeal). Indeed, even though the Court in *Carter* at one point described "dismissal" as the end of an FCA action's pendency, the Court considered and decided that case notwithstanding the fact that it had

been dismissed, thus confirming that the case remained pending because it was subject to further review even after it had been dismissed. *See* 135 S. Ct. at 1975; *see also Carter*, 2011 WL 2118227, at *4 (dismissing Carter's refiled action because he brought it while his earlier action was still pending on his petition for certiorari seeking review of its dismissal); *cf. Plaut*, 514 U.S. at 227 (holding that an action is "pending" rather than "dismissed" while the prospect of appeal remains open). Thus, just as in *Plaut*, *Carey*, and *Lawrence*, Congress used the ordinary meaning of "pending" in the FCA to bar the bringing of new actions while the possibility of recovery in an existing action remains open.

This is so regardless of a given relator's subjective intent regarding whether to pursue further review of a dismissal. That subjective, case-specific consideration does not factor into the accepted objective meaning of "pending" as just discussed, nor does it appear anywhere in the FCA. On the contrary, the first-to-file bar directs courts to determine whether a related action was pending at the time the relator *brought suit*. *See Wood I*, 899 F.3d at 172–74. As a result, the fact that a dismissed-but-still-pending action ends up staying dismissed (either because no further review is sought or because further review is denied) is no more relevant than the fact that a pending action was subsequently dismissed; what matters is whether the prior action was pending at the time the action at issue was brought. Accordingly, the fact that Wood ultimately opted not to file a cert petition in his prior action is irrelevant; what matters is that the time for Wood to file a cert petition remained open, and his prior action therefore remained pending, at the time he brought this action. Indeed, Wood's prior action was pending in a very real sense—Wood told the Supreme Court two days *after* filing this action that he intended to seek certiorari so that the Second Circuit's decision would not be "the final word of the [judicial] department as a whole" on his prior action. *Plaut*, 514 U.S. at 227.

Determining pendency retroactively based on an individual relator's intent would also run counter to the many detailed FCA provisions that govern the relationship between relators and the Government. The right to recover for fraud belongs not to the relator, but to the United States. *See* 31 U.S.C. § 3729(a)(1); *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000); *U.S. ex rel. Fair Lab. Practices Assoc. v. Quest Diagnostics Inc.*, 734 F.3d 154, 166 (2d Cir. 2013) (noting that relators act "neither as the real party in interest nor in a representative capacity"). Consistent with this peculiar arrangement, the Government always retains substantial interests in—and powers to affect—a pending *qui tam* suit, even when it has declined to intervene at the outset. 31 U.S.C. §§ 3730(c)(2)–(5), (d)(2); *see Eisenstein*, 556 U.S. at 931 n.2; *Everglades Coll.*, 855 F.3d at 1286; *Ridenour*, 397 F.3d at 933; *Swift v. United States*, 318 F.3d 250, 251 (D.C. Cir. 2003); *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 157 (5th Cir. 1997). And the FCA expressly places that interest *above* the relator's desires. *See* 31 U.S.C. §§ 3730(b)(1), (c)(2). Indeed, even where a lower court has ordered dismissal, the Government may still seek to intervene and challenge that ruling when the relator would not, so long as the time to appeal has not expired. *See Killingsworth*, 25 F.3d at 719–20; *see also Eisenstein*, 556 U.S. at 931 n.2; *Ridenour*, 397 F.3d at 934 (discussing several circuits' view that "the FCA is constitutionally sound as long as it is interpreted as vesting in the Executive Branch sufficient control over *qui tam* actions so there is no violation of its duty to enforce the laws of the land"); *U.S. ex rel. Dep't of Def. v. CACI Int'l Inc.*, 953 F. Supp. 74, 78 (S.D.N.Y. 1995) (recognizing the same issue).

The Second Circuit's decision in Wood's earlier action remained subject to appeal—and therefore pending—through January 4, 2019. *See Wood I*, No. 18A448 (U.S.). This is so even though this Court ordered dismissal on October 3, 2018, because both Wood and the Government still could challenge that outcome through further proceedings in that action. In fact, Wood

continued to prosecute his earlier action simultaneously by successfully seeking an extension of the time to petition the Supreme Court two days after filing his new action. Wood's first action thus barred this action on October 25, 2018 when Wood brought it, and the Court must dismiss this action. *Wood I*, 899 F.3d at 175.

## II.     Wood Has Failed To State Timely Fraud Claims Under The False Claims Act.

Even if the Court does not dismiss this action under the first-to-file bar, it should dismiss Wood's claims as time-barred. The FCA's express terms render his claims untimely, and equitable tolling cannot justify their revival. *First*, the text and structure of the FCA show that Congress left no room for the judge-made tolling doctrine that Wood seeks to invoke. *Second*, even if tolling could, in principle, be available, it is not available in this case because neither the Government nor Wood has suffered from inequitable circumstances warranting such relief. *Cf. Wood I*, 899 F.3d at 174 (declining premature consideration of Wood's argument for tolling).

### A.     Wood's Claims On Behalf Of The United States Are Time-Barred.

The FCA's express terms make this action untimely. Under 31 U.S.C. § 3731(b), a *qui tam* action

> may not be brought--
>
> (1) more than 6 years after the date on which the violation of section 3729 is committed,
>
> or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

As noted above, because of the tolling this Court ordered pending appeal, Wood's new action, though filed on October 25, 2018, would be timely to the extent it would have been timely

if filed on May 28, 2017. Wood's complaint alleges violations occurring from 2003 until January 2011. Compl. at 12, 100, 102; *see Wood I*, 246 F. Supp. 3d at 784, 823. The six-year period under § 3731(b)(1) thus expired in 2009 for the earliest of the alleged violations and in January 2017 for the latest. Section 3731(b)(1) thus bars Wood's claims absent equitable tolling.

This Court has held that the three-year limitations period under § 3731(b)(2) applies to relators in *qui tam* actions. *See* 246 F. Supp. 3d at 801–03; *but cf. Cochise Consultancy Inc. v. U.S. ex rel. Hunt*, 139 S. Ct. 566 (2018) (granting certiorari to determine the proper application of § 3731(b)). The Government could not have discovered the alleged fraud any later than the filing of Wood's initial action in July 2010. *See United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 607 (S.D.N.Y. 2013) (Furman, J.); *cf. U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 777 F. Supp. 195, 205 (N.D.N.Y. 1991) ("[O]nce officials who could take action recognize the essential elements of the cause of action, the statute is not tolled."), *aff'd*, 985 F.2d 1148 (2d Cir. 1993). The three-year period thus expired no later than July 2013.

Wood's claims are thus time-barred absent equitable tolling, and he appears to concede as much in his new complaint (and in his premature "motion to apply equitable tolling," Dkt. 19 & 20, which the Court dismissed, Dkt. 27). *See* Compl. 9, 107–09 (arguing for tolling while the earlier action was under seal); Dkt. 20 at 5, 15.

**B.      Equitable Tolling Is Inconsistent With The False Claims Act.**

The availability of equitable tolling is a question of legislative intent. *E.g. Burnett v. N.Y. Cent. R. Co.*, 380 U.S. 424, 426 (1965). Though courts presume that Congress drafts statutes of limitations with traditional tolling principles in mind, *Holland v. Florida*, 560 U.S. 631, 645–46 (2010), a statute's terms may rebut that presumption, *see United States v. Brockamp*, 519 U.S. 347 (1997). Accordingly, this Court must examine the purpose and policy underlying the FCA, its

"remedial scheme," and its timeliness provisions, to determine whether Congress intended equitable tolling to be available in this context. *Burnett*, 380 U.S. at 427; *see Acierno v. Barnhart*, 475 F.3d 77, 81–83 & n.2 (2d Cir. 2007) (holding tolling unavailable due to conflict with the statutory scheme); *Garcia v. Portuondo*, 334 F. Supp. 2d 446, 459 (S.D.N.Y. 2004) ("[E]quitable tolling is to be applied sparingly and then only if it is not inconsistent with the statutory text.") (footnotes omitted). These considerations foreclose tolling here.

### 1. The FCA's Purpose Counsels Against Tolling.

"There can be no dispute that the primary purpose of the FCA is to permit the Government to recover for fraud inflicted upon it." *Wood I*, 246 F. Supp. 3d at 797 (citing *Cook Cty. v. U.S. ex rel. Chandler*, 538 U.S. 119, 129–35 (2003)). Likewise, there can be no dispute that the Government has had ample opportunity to recover for the alleged fraud described in Wood's complaint. The Government long ago concluded a "complete investigation" of Wood's allegations, Compl. at 7, and it has twice declined to participate in an FCA action based on those very allegations and twice declined to participate in related FCA actions based on similar allegations. *See Wood II*, Dkt. 3 (this action); *Wood I*, 246 F. Supp. 3d at 786 (*Lampkin* action, *Caryatid* action, and prior *Wood* action). As a result, no tolling is needed to effectuate the primary purpose of the FCA. *Cf. United States v. Beggerly*, 524 U.S. 38, 49 (1998) (holding tolling unavailable in part due to the "already generous" limitations period at issue).

Wood seemingly contends that the Government's investigation of his allegations and discretion concerning whether to intervene to pursue those allegations somehow unfairly undermine the FCA's purpose. Compl. at 107. But that is backwards: the Government's investigation and control over Wood's *qui tam* actions *further* the FCA's purposes. *See, e.g.*, *Wood I*, 246 F. Supp. 3d at 797. Wood's prior action was under seal because Congress required

*qui tam* actions to be filed under seal, and the Government investigated his allegations because Congress directed the Government to investigate *qui tam* allegations so the Government can exercise its prerogative to intervene or to decline to intervene. Likewise, any suggestion that the first-to-file bar is *itself* unjust merely amounts to criticism of the terms upon which Congress has chosen to permit *qui tam* actions. Courts have no warrant to override Congress's choices based on their views of what is equitable. *See, e.g.*, *Acierno*, 475 F.3d at 83. That is particularly true given that the first-to-file bar limits only the derivative rights Congress chose to give relators and in no way limits the Government's ability "to recover for fraud inflicted upon it," *Wood I*, 246 F. Supp. 3d at 797. Considerations of statutory purpose thus weigh decidedly against tolling.

## 2. The FCA's Remedial Scheme Rebuts The Presumption Of Tolling.

The FCA's remedial scheme further rebuts the presumption that equitable tolling is available. The FCA provides for liability in damages and penalties owed to the United States. 31 U.S.C. § 3729(a)(1). As a relator, Wood's "rights" are mere offshoots of the Government's claims. *See id.* § 3730(d); *see also Stevens*, 529 U.S. at 773 ("A *qui tam* relator has suffered no … invasion [of a legally protected right]—indeed, the 'right' he seeks to vindicate does not even fully materialize until the litigation is completed and the relator prevails."). The FCA's remedial provisions make clear that Congress did not intend Wood's bounty to exist independent of the Government's right to recovery. *See* 31 U.S.C. §§ 3730(b)(5), (e)(4)(a); *Stevens*, 529 U.S. at 771–74. Nor could it as a constitutional matter, given that a relator suffers no injury-in-fact and thus has no personal claim apart from the Government's claims. *Stevens*, 529 U.S. at 773; *Ridenour*, 397 F.3d at 934.

Although relators aid the Government by identifying potential false claims, the inducements to bring a *qui tam* action already "adequate[ly] incentiv[ize]" relators to the degree,

and under the terms, chosen by Congress. *Wood I*, 899 F.3d at 174 (quoting *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994)). Those inducements produced three timely lawsuits in this instance. Given Congress's thorough regulation of the unique relationship between relators and the Government, it could not have viewed its own restrictions on *qui tam* litigation—or its own distinctions between the rights of the Government and the derivative, secondary, and limited rights of relators—as inequitable obstacles to the remedies it created in the FCA. On the contrary, those restrictions and conditions are *integral parts* of the FCA's unique remedial scheme. *See* 31 U.S.C. § 3730(b)(1)–(3).

### 3. The FCA's Timeliness Provisions Prohibit Wood's Tolling Rule.

Finally, the FCA's intricate, multi-layered framework for determining an action's timeliness leaves no room for judicial revision.

The FCA "sets forth its time limitations in a highly detailed technical manner," *Brockamp*, 519 U.S. at 350. As already mentioned, an FCA fraud action "may not be brought" beyond the later of two deadlines. 31 U.S.C. § 3731(b). The first deadline falls six years "after the date on which the violation ... is committed." *Id.* § 3731(b)(1). The second deadline falls three years after the Government knows or should know the "facts material to the right of action[,] … but in no event more than 10 years after the date on which the violation is committed." *Id.* § 3731(b)(2). These deadlines work in concert to produce a complex set of time bars:

- If the government **discovers** the material facts *within three years* of **the violation**, an action is timely *up to six years* after **the violation**.

- If it **discovers** the material facts *more than three years but less than seven years* after **the violation**, an action is timely *up to three years* after **the discovery**.

- If it **discovers** the material facts *more than seven years* after **the violation**, an action is timely *up to ten years* after **the violation**.

- And if it **discovers** the material facts *more than ten years* after **the violation**, no action could possibly be timely.

Thus, unlike the "fairly simple" language usually employed in statutes of limitations, the FCA's comprehensive terms do not "plausibly read as containing an implied 'equitable tolling' exception." *Brockamp*, 519 U.S. at 350.

The complexity and terms of Congress's timeliness regime also make it difficult to see what exactly could be tolled. Courts cannot toll the ten-year bar, because it is *not* a statute of limitations—it is a statute of *repose. See U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 723 (10th Cir. 2006); *U.S. ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1218 (9th Cir. 1996). The Second Circuit has repeatedly emphasized that these two types of time bars "are distinct." *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 88 n.4 (2d Cir. 2010). Statute of limitations may be subject to equitable correction because they merely *deny a remedy* a set time after a legal claim *has accrued. Id.* Statutes of repose are not subject to equitable correction because they *extinguish* the claim a set time after *the underlying wrong. Id.*; *see also Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 712 F.3d 136, 142–44 & nn.3–4 (2d Cir. 2013) (illustrating the distinction in context of Securities Act). Accordingly, the hallmark of a statute of repose is that it "begins to run … once the necessary triggering event has occurred, even if … the plaintiff has not yet, or could not yet have, discovered that she has a cause of action." *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102–03 (2d Cir. 2004). The FCA's ten-year bar emphatically prohibits suit a decade after *the violation*, regardless ("in no event") of whether the Government is aware of its cause of action. *See* 31 U.S.C. § 3730(b). It thus fits the black-letter definition of a statute of repose, *see, e.g.*, *UBS*, 712 F.3d at 142–44 & nn.3–4, and cannot be tolled, *see, e.g.*, *CTS Corp. v. Waldburger*, 573 U.S. 1, 10 (2014).

These same principles counsel against tolling the six-year bar as well. Indeed, the six-year bar is—as a textual matter—nearly identical to the ten-year bar. *See* 31 U.S.C. § 3731(b); *see, e.g. Pereira v. Sessions*, 138 S. Ct. 2105, 2115 (2018) (like terms within a statute carry the same meaning). And although numerous opinions refer to the six-year bar as a statute of *limitations*, courts often fail to use precise language in this area, *UBS*, 712 F.3d at 142–43; *see also id.* at 143 (noting Congress's occasional imprecision), especially when the parties do not grapple over the distinction or nothing turns on it. Moreover, while some courts applied an equitable *discovery rule* to delay the six-year bar before the 1986 amendments, *see, e.g., United States v. Uzzell*, 648 F. Supp. 1362, 1366–68 (D.D.C. 1986), their reasoning ignores—or denies—the law's distinction between the *accrual* of a claim and occurrence of the underlying *wrong*, *see, e.g. Gabelli v. SEC*, 568 U.S. 442, 448–49 (2013); *see also Ellul*, 774 F.3d at 801 ("[T]he diligence-discovery rule *delays* the date of accrual where the plaintiff 'is blamelessly ignorant of the existence or cause of his injury'" (quoting *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982)); *U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1157 (2d Cir. 1993) (applying the distinction to the FCA in dicta). This Court should not follow that unsound logic.

But even assuming the six-year bar *is* a statute of limitations, it still is not subject to tolling under this unique statutory scheme. That is because—in apparent recognition of the six-year bar's inflexibility—Congress has already provided for inequitable contingencies by legislating a discovery rule into the FCA. *See Sikkenga*, 472 F.3d at 723–24 & n.31; *see also U.S. ex rel. Erskine v. Baker*, 213 F.3d 638 (table), 2000 WL 554644, at *2 (5th Cir. April 13, 2000). In so doing, it ensured application of a long-recognized equitable exception to the accrual of fraud claims. *See, e.g.*, *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 644–45 (2010) (explaining the traditional discovery rule). That effort shows Congress has considered the potential inequities of

the six-year bar and addressed them explicitly, leaving no room for further judicial revision. *See Acierno*, 475 F.3d at 82 ("Given that the statute provides an exclusive list of exceptions and reiterates, in various and specific forms, the limits imposed on amending records of the self-employed, we believe it is inconsistent with an open-ended implied tolling provision."); *cf. Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (holding equitable tolling inconsistent with the similar time bars applied under federal securities law); *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").

This leaves Wood with only the three-year bar, the tolling of which would make no sense under the present circumstances. The three-year bar—a black-letter statute of limitations—runs for three years from accrual of the claim. 31 U.S.C. § 3730(b)(2). Tolling such a provision to correct for the Government's own conduct or to negate a statutory condition that does not apply to the Government would have no grounding in the statute and would indeed be *inequitable*. A comprehensive investigation *furthers* the Government's interest—and, by extension, the relator's derivative interest—in recovery for potential fraud. As for the supposed inequities of the first-to-file bar, Congress has already ameliorated those inequities by exempting the Government from the bar's operation—consistent with Congress's focus on protecting the Government's interests and regulating the relationship between the Government and relators. *See id.* § 3730(b)(5); *supra* at 10–12. Indeed, Wood's proposed tolling rule would do nothing more than allow *Wood* to continue to seek a relator's bounty *independent* of the Government's interests and rights and Congress's restrictions. Having enacted detailed timeliness provisions addressing the contingencies it believed needed addressing, and having struck a delicate and complex balance between the rights

of the Government and those of relators in this unique statutory scheme, Congress could not have intended courts to step in and apply freewheeling notions of equity to undo the results compelled by the statute. *See Acierno*, 475 F.3d at 82.

* * *

In sum, the FCA leaves no room for equitable tolling to "correct" for the restrictions it places on *qui tam* actions. It is thus unsurprising that, to Allergan's knowledge, no court has ever tolled the FCA's time bars on such grounds. This Court should not be the first.

### C. There Is Nothing Inequitable About The Circumstances Of This Case.

Even if equitable tolling were not inconsistent with the text, structure, and purpose of the FCA, it would not be warranted here. Even where statutes are susceptible to equitable tolling, "[f]ederal courts have typically extended [such] relief only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). "Generally," under Second Circuit case law, "a litigant seeking equitable tolling bears the burden of establishing … (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) (quoting *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015)). Those considerations do not justify tolling here.

### 1. The Government Has Suffered No Inequities.

To begin, any tolling in Wood's favor would be tolling in *the Government's* favor, which would be clearly inequitable. As already explained, the relator's entire interest in a *qui tam* suit derives from the *Government's* right to recovery. *See, e.g.*, *Stevens*, 529 U.S. at 773. Accordingly, the equities must be viewed from the standpoint of the Government. *Cf. Quest Diagnostics Inc.*, 734 F.3d at 166 (relators act "neither as the real party in interest nor in a representative capacity"). That proper viewpoint negates any argument for equitable tolling. Wood asks for tolling so that

he can continue to pursue a relator's bounty on the Government's remedy. But the Government's decision not to pursue numerous timely filed actions negates any showing of diligence. *See, e.g.*, *Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 239 F. Supp. 3d 761, 790 (S.D.N.Y. 2017). And indeed, the supposed "extraordinary circumstances" Wood identifies all stem from *the Government's* conduct. *The Government* undertook a lengthy investigation *in furtherance* of its right to recover under the FCA. *See* 31 U.S.C. § 3730(a)–(b). And had the Government decided to pursue that right, the first-to-file bar would have presented no obstacle. *Id.* § 3730(b)(5). To invoke equity to rewrite clear statutory limitations to prevent dismissal of the Government's claims would be perverse.

### 2. Wood Has Suffered No Inequities.

Though the Court should focus on the Government rather than Wood, it would make no difference if the Court considered the issue from Wood's standpoint.

Tolling to negate the entire duration of *Wood I* would ignore Wood's role in lengthening— and prematurely terminating—that lawsuit. It was Wood who pressed a controversial interpretation of the first-to-file bar, only to lose on appeal. *Cf. U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 519 (6th Cir. 2007) (tolling to effectuate a *successful* relator appeal). Then, despite the acknowledged circuit split on the face of the Second Circuit's decision, Wood opted to abandon his interpretation by not petitioning for certiorari, despite having told the Supreme Court he would do so. This is not the diligence the law requires. *See Johnson v. Nyack Hosp.*, 891 F. Supp. 155, 161 (S.D.N.Y. 1995), *aff'd*, 86 F.3d 8 (2d Cir. 1996).

Nor should the Court equate Wood's initial, barred action with a valid action "defective[ly] ple[d]" or mistakenly brought to the wrong court. *Irwin*, 498 U.S. at 96. Unlike the typical defendant in such circumstances, Allergan had no notice of Wood's first action when he filed it or

for years afterward. *See Williams v. Walsh*, 558 F.2d 667, 675 (2d Cir. 1977) (identifying notice to the defendant as the hallmark of such tolling principles); Compl. at 6–7. And unlike the typical plaintiff, the "defect" preventing Wood's first action from moving forward was the Government's exercise of its prerogative not to prosecute it. *Cf., e.g.*, *Burnett*, 380 U.S. at 432 (ameliorating a defect of procedure, rather than substance).

Most fundamentally, the circumstances Wood claims are "extraordinary" all derive from *the FCA itself*. It is only by legislative grace that a private citizen like Wood bring an FCA action as the Government's partial assignee *at all*. *See Stevens*, 529 U.S. at 773. And that highly unusual privilege understandably comes with conditions. *Congress* has required *qui tam* relators to file their actions under seal and serve "all material evidence and information … on the government." 31 U.S.C. § 3730(b)(2). *Congress* has empowered the Government to move to extend that seal so it can conduct a full investigation. *Id.* § 3730(b)(3). *Congress* has precluded relators from dismissing and refiling their actions without the Government's consent. *Id.* § 3730(b)(1). *Congress* has mandated dismissal of actions under the first-to-file bar. *Id.* § 3730(b)(5); *see Wood I*, 899 F.3d at 172. These legislatively mandated conditions governing *qui tam* actions cannot qualify as "extraordinary circumstances." *See Irwin*, 498 U.S. at 96; *cf. Rite Aid of New York, Inc. v. 1199SEIU United HealthCare Workers E.*, 334 F. Supp. 3d 568, 576 (S.D.N.Y. 2017) (holding that the unsuccessful attempt to settle a case was not an extraordinary circumstance); *Patraker v. Council of Env't*, No. 02-cv-7382 (LAK), 2003 WL 22336829, at *2 (S.D.N.Y. Oct. 14, 2003) (defendant's failure to appraise plaintiff of the alleged liability was not an extraordinary circumstance). To invoke extraordinary equitable powers to negate these provisions would be to rewrite the FCA itself.

Finally, any comparison to cases where *courts themselves* caused delay would be totally inapt. Wood does not allege any undue delay on the part of this or any other court. *See* Compl. at 107–09. And far from gumming up his prior action, this Court acted with alacrity in certifying its decision on the first-to-file issue for interlocutory appeal. *Cf., e.g.*, *Kassman v. KPMG LLP*, No. 11 CIV. 03743 LGS, 2015 WL 5178400, at *4 (S.D.N.Y. Sept. 4, 2015) (applying a widely recognized tolling rule to prevent the court's delay in certifying a collective action from preventing the joinder of class members).[2]

## III. Wood Has Failed to State A Timely Retaliation Claim.

Wood's retaliation claim also is time-barred and does not warrant tolling.

### A. Wood's Retaliation Claim Is Time-Barred.

Wood's retaliation claim is untimely under the FCA's express terms. The FCA provides a personal right of action (not a *qui tam* claim on behalf of the Government) to an "employee[] … discharged … because of lawful acts done … in furtherance of" an FCA action "or other efforts to stop … [FCA] violations." 31 U.S.C. § 3730(h)(1). This right of action has its own limitations period, which runs three years from the date on which the retaliation occurs. *See id.* § 3730(h)(3). Wood alleges retaliation occurring in July 2010. *See* Compl. at 106. Wood has thus brought his retaliation claim more than five years too late.

### B. Wood's Retaliation Claim Does Not Warrant Equitable Tolling.

Even assuming that the FCA's retaliation provision leaves room for equitable tolling, tolling is not warranted here. The alleged facts giving rise to Wood's retaliation claim stand

---

[2] Even if tolling could apply, the Court must still enforce the FCA's ten-year repose rule, 31 U.S.C. 3731(b)(2); *Sikkenga*, 472 F.3d at 723, which definitively extinguishes liability regardless of the equities, *see, e.g. UBS*, 712 F.3d at 142–44 & nn.3–4.

separate from the facts alleging fraud on the Government.  *See* Compl. at 103–07.  As well they should, because "proving a [fraud on the Government] is not an element of a … cause of action for retaliation."  *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 416 n.1 (2005).  Wood therefore had no need to bring his retaliation claim in his *qui tam* action.  *Cf. U.S. ex rel. Tahlor v. AHS Hosp. Corp.,* No. 2:08-CV-02042 WJM, 2013 WL 5913627, at *16 (D.N.J. Oct. 31, 2013) (filing of FCA fraud action did not toll limitations period for retaliation action).  Likewise, because Wood's retaliation claim was personal to him and not a *qui tam* claim on behalf of the Government, Wood could have voluntarily dismissed his retaliation claim at any time, *see* 31 U.S.C. § 3730(b)(1) (Government's power to block dismissal applies to FCA *qui tam* claims), and refiled it free of the Government's involvement.

That relators *often* bring their retaliation claims within a larger *qui tam* action is no retort.  Courts do not apply equitable tolling to correct or ameliorate the practical realities of litigation.  *Irwin*, 498 U.S. at 96; *Johnson v. Nyack Hosp.*, 86 F.3d 8, 13 (2d Cir. 1996) (failure to pursue concurrent administrative proceedings showed lack of diligence); *cf. U.S. ex rel. Deering v. Physiotherapy Assocs., Inc.*, 601 F. Supp. 2d 368, 373 (D. Mass. 2009) (plaintiff could "identify no case law supporting the idea that the sealing of an FCA complaint tolls the statute of limitations on other claims a relator might later raise").

Finally, even if Wood had taken every reasonable opportunity to preserve his retaliation claim, tolling would still not be warranted.  For all the reasons already explained, Congress could not have intended the normal, expected operation of the FCA, or the normal adversarial process of litigation, to be deemed an unforeseeable, unjust circumstance requiring extraordinary judicial intervention.  *See Irwin*, 498 U.S. at 96.

## IV. The Court Should Dismiss Wood's State-Law Claims As Well.

Like Wood's federal claims, most of his state-law claims are time-barred under the applicable state statutes of limitation and repose. Federal equitable tolling does not apply to state-law claims, so Wood's contentions regarding tolling cannot save these claims. Finally, as in the previous action, the Court should limit liability under several of the state statutes to prevent them from having unintended retroactive effect.

### A. State-Law Time Bars Apply To The State-Law Claims.

Any state-law limitation or repose periods must apply in federal court. Wood invokes the Court's jurisdiction over the state-law claims because they share a common nucleus of operative facts with the federal claims. Compl. at 9; *see* 31 U.S.C. § 3732(b). Accordingly, the Court must apply state substantive law to the state-law claims. *See Colgate Palmolive Co. v. S/S Dart Canada*, 724 F.2d 313, 316 (2d Cir. 1983) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). This includes application of state time bars, *see Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945), including tolling provisions, *see Commerzbank AG v. U.S. Bank Nat'l Ass'n.*, 277 F. Supp. 3d 483, 489 (S.D.N.Y. 2017) (citing *Diffley v. Allied–Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990)).

A forum state's choice-of-law rules also qualify as substantive law for *Erie* purposes. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). In this case, that principle requires application of New York's "borrowing statute." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 410 (S.D.N.Y. 2010). Wood and the governments on whose behalf he brings this action of are not citizens of New York, *see* Compl. at 10, so the borrowing statute prohibits recovery on any claim accruing *outside* of New York unless it would be timely *both* in New York *and* in the state where it accrued. *See* N.Y. C.P.L.R. 202 (McKinney); *Chiste*, 756 F. Supp. 2d at 410 (citing *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002)).

For purposes of the borrowing statute, New York follows the traditional rule that a claim accrues "at the time and in the place of the injury." *Thea v. Kleinhandler*, 807 F.3d 492, 498 (2d Cir. 2015) (quoting *Glob. Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 484–85 (N.Y. 1999)). "When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Id.* The state-law claims therefore accrued in their respective states and are barred if untimely under the law of the state that created the claim.

### B. Many Of The State Limitations Periods Have Run.

The false claims statutes of California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Illinois, Indiana, Louisiana, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Rhode Island, Tennessee, and Virginia mirror the federal False Claims Act's timeliness provisions.[3] Those limitations periods bar the respective state-law claims for reasons already explained.

In Georgia, a relator may, in some circumstances, file an action up to four years after the state official responsible for enforcement knows of the underlying violation. *See* Ga. Code Ann. § 49-4-168.5. But that potential for one extra year (compared to the federal three-year discovery rule) makes no difference in this case, because this action would still have been filed long after the four years would have run in 2014. The Georgia claims are thus barred.

---

[3] *See* Cal. Gov. Code § 12654(a); Colo. Rev. Stat. § 25.5-4-307(1); Conn. Gen. Stat. § 4-285; Del. Code Ann. tit. 6, § 1209(a); D.C. Code § 2-381.05(a); Fla. Stat. § 68.089(1); 740 Ill. Comp. Stat. 175/5(b); Ind. Code § 5-11-5.5-9; La. Stat. Ann. § 46:439.1(B); Mass. Gen. Laws ch. 12 § 5K(1); Mich. Comp. Laws § 400.614(1); Minn. Stat. § 15C.11(a); Mont. Code Ann. § 17-8-404(1); Nev. Rev. Stat. § 357.170(1); N.J. Stat. Ann. § 2A:32C-11; N.C. Gen. Stat. § 1-615(a); Okla. Stat. tit. 63, § 5053.6(B); R.I. Gen. Laws § 9-1.1-5(b); Tenn. Code Ann. § 71-5-184(b); Va. Code Ann. § 8.01-216.9; *see also Wood I*, 246 F. Supp. 3d at 833–34 (identifying state limitations provisions that are "substantially similar, if not identical," to the FCA's).

Under the Hawaiʻi version of the False Claims Act, an action is timely up to six years after reasonable discovery of the violation. *See* Haw. Rev. Stat. § 661-24; *see also id.* (requiring repose after ten years). Again, however, this difference is immaterial—discovery could not have occurred any later than the commencement of Wood's first action in 2010.

New Mexico law gives a relator four years to file an action from the date the cause of action accrues. *See* N.M. Stat. Ann. § 27-14-13; *id.* § 37-1-4; *see also id.* § 37-1-1 (starting the limitations *and repose* period at the time the cause accrues). This puts the New Mexico claims outside of the limitations period as well. *See Wood I*, 246 F. Supp. 3d at 834.

### C. Federal Principles Of Equitable Tolling Do Not Apply To State-Law Claims.

"The equitable tolling decisions of federal courts on matters of federal law are not relevant" to state-law claims. *Vincent v. Money Store*, 915 F. Supp. 2d 553, 572 (S.D.N.Y. 2013). Wood would therefore have to prove entitlement to tolling under the applicable state-law doctrines. *Id.* at 562. Neither his complaint nor his "motion to apply equitable tolling" attempts to do so. In the unlikely event that Wood identifies state-specific tolling arguments, any such arguments are likely to raise "novel or complex issue[s] of State law," counseling against the exercise of jurisdiction over those claims if the Court dismisses the federal claims. *See* 28 U.S.C. §§ 1367(c)(1), (3).

### D. State-Law Liability Cannot Predate The Various State False Claims Statutes.

Though unnecessary if the Court holds these state-law claims time-barred, the Court has already recognized that it must limit any liability under the laws of Connecticut, Georgia, Indiana, Minnesota, Montana, New Jersey, New Mexico, Oklahoma, Rhode Island, and Virginia to prevent unintended retroactive liability. *See Wood I*, 246 F. Supp. 3d at 833 & n.36. For the same reasons, the Court should also limit any liability under the laws of Michigan, New York, North Carolina, and Wisconsin. *See* Michigan Medicaid False Claims Act, Mich. Comp. Laws § 400.610a *et seq.*

(effective Jan. 3, 2006); *Johnson v. Pastoriza*, 818 N.W.2d 279, 285 (Mich. 2012); New York State False Claims Act, N.Y. Local Finance Law, art. 13, § 187 *et seq.* (effective April 1, 2007); *St. Clair Nation v. City of New York*, 928 N.E.2d 404, 456–57 (N.Y. 2010); North Carolina False Claims Act, N.C. Gen. Stat. § 1-615 *et seq.* (effective Jan. 1, 2010); *State v. Green*, 514 S.E.2d 724, 727 (N.C. 1999); Wisconsin False Claims for Medical Assistance Act (effective Oct. 27, 2007); *Lands' End, Inc. v. City of Dodgeville*, 881 N.W.2d 702, 711 (Wis. 2016).

### E.     Changes To Texas Law Limit Wood's Claims On Behalf Of Texas.

The Texas false claims statute in effect during a portion of the alleged violations precluded actions if the state declined to intervene.  *See* Tex. Hum. Res. Code § 36.104(b) (2008).  Liability thus cannot attach under Texas law for any conduct occurring before effective amendment of the Texas statute on May 4, 2007.  *Wood I*, 246 F. Supp. 3d at 832–33.

### CONCLUSION

For the foregoing reasons, the Court should dismiss this action.

Respectfully submitted.

/s/ *John Emmett Murphy*

| | |
|---|---|
| Jeffrey S. Bucholtz, *Pro Hac Vice*<br>Gabriel Krimm, *Pro Hac Vice**<br>KING & SPALDING LLP<br>1700 Pennsylvania Ave., NW<br>Washington, DC 20006<br>Tel: 202-626-2907<br>Fax: 202-626-3737<br>jbucholtz@kslaw.com<br>gkrimm@kslaw.com<br>*Admitted only in Tennessee.  Practice in the<br>District of Columbia supervised by principals<br>of the Firm. | John Emmett Murphy<br>KING & SPALDING LLP<br>1185 Avenue of the Americas<br>New York, NY 10036<br>Tel: (212) 556-2100<br>Fax: (212) 556-2222<br>jemurphy@kslaw.com |

*Counsel for Defendant Allergan, Inc.*

February 8, 2019